UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| TERRILL JOHNSON,<br><br>    Plaintiff,<br><br>  v.<br><br>Q.E.D. ENVIRONMENTAL SYSTEMS INC.,<br><br>    Defendant. | Case No. 16-cv-01454-WHO<br><br>ORDER DENYING MOTION TO DISMISS<br><br>Dkt. No. 34 |

## INTRODUCTION

Plaintiff Terrill Johnson alleges that his previous employer, Q.E.D. Environmental Systems Inc., violated various provisions of the California Labor Code and the Fair Labor Standards Act by providing him and other employees with inadequate meal breaks. He asserts that QED instructed and encouraged Johnson and other employees to take short breaks and finish rush projects before taking their meal breaks, while automatically deducting 30 minutes from employees' timecard. This is enough to plausibly plead his missed meal break claim, and his remaining claims – for failure to pay overtime wages, failure to provide accurate wage statements, failure to timely pay all final wages, violation of California Business and Professions Code § 17200, and violation of Fair Labor Standards Act – are predicated in part on the missed meal break claim and are also plausibly pleaded. Accordingly, QED's motion to dismiss is DENIED.

## BACKGROUND

Johnson worked at two QED locations from "approximately 2005 to on or around August 26, 2014." Third Amended Complaint ("TAC") ¶ 5. Johnson regularly worked from 6:45 am to 3:15 pm, Mondays through Fridays, and worked longer hours "at least once every two weeks." *Id.*

Johnson's duties included assembling module boxes, assembling pumps, cleaning, and doing detail work on projects. *Id.* He and the other putative class members would work on "rush"

projects "at least once every two weeks." *Id.* ¶ 27. Johnson and others were "encouraged" by QED to take meal breaks shorter than 30 minutes when working on rush projects, and took breaks of "only 20 or 25 minutes" in order to quickly finish the rush projects. *Id.* In addition, when working on these rush projects, Johnson was "instructed" to finish projects before taking meal breaks. *Id.* ¶¶ 29, 30. This resulted in the meal breaks being shorter than 30 minutes and being taken after the employee's first five hours of working. *Id.*

QED "directed" Johnson and other employees that they did not need to clock out for meal breaks. *Id.* ¶ 33. Instead, QED maintained a policy of automatically deducting a 30-minute meal break from an employee's timecard. *Id.*

QED's Employment Manual includes sections entitled "Rest and Meal Periods" and "Timekeeping." The sections provide, in relevant part, that:

> Supervisors will advise associates of the regular rest period length and schedule. Since this time is counted and paid as time worked, associates must not be absent from their workstations beyond the allotted rest period time. Rest periods that are not observed may not be deducted from a late arrival/early dismissal or added to a meal period.
> All full-time associates are provided with one meal period each workday. Supervisors will schedule meal periods to accommodate operating requirements. Associates will be relieved of all active responsibilities and restrictions during meal periods and will not be compensated for that time. . . .
> Normal working hours and lunch periods may vary from one work location to another. Regular working hours of associates are established at the time of employment and may be changed as authorized by the associate's manager.

FAC, Exh. A. Citing the Employment Manual, Johnson alleges that QED's "written policies do not provide that employees must take their first meal break before the end of the fifth hour of work, that the meal break should be 30 minutes, that they are entitled to a second meal break if they work a shift of ten (10) hours or more, or that the second meal period must commence before the end of the tenth hour of work, unless waived." *Id.* ¶ 31.

Johnson's TAC brings several claims in connection with these allegations: (1) failure to provide meal periods in violation of California Labor Code §§ 204, 223, 226.7, 512, and 1198; (2) failure to pay hourly and overtime wages in violation of California Labor Code §§ 223, 510, 1194, 1197, and 1198; (3) failure to provide accurate written wage statements in violation of California

Labor Code § 226; (4) failure to timely pay all final wages in violation of California Labor Code §§ 201-203; (5) violation of California Business and Professions Code § 17200, *et seq.* (the "UCL"); (6) failure to pay employees for all hours worked in violation of the Fair Labor Standards Act. *Id.* ¶¶ 18-112. QED moves to dismiss all of the claims as inadequately pleaded. Mot. [Dkt. No. 34].

## LEGAL STANDARD

To survive a motion under Federal Rule of Civil Procedure 12(b)(6), the plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is facially plausible when the plaintiff pleads facts that "allow the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted). There must be "more than a sheer possibility that a defendant has acted unlawfully." *Id*. While courts do not require "heightened fact pleading of specifics," a plaintiff must allege facts sufficient to "raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555, 570.

In deciding whether the plaintiff has stated a claim upon which relief can be granted, the court accepts the plaintiff's allegations as true and draws all reasonable inferences in favor of the plaintiff. *See Usher v. City of Los Angeles*, 828 F.2d 556, 561 (9th Cir. 1987). However, the court is not required to accept as true "allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *In re Gilead Scis. Sec. Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008). If the court dismisses the complaint, it "should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured by the allegation of other facts." *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000).

## DISCUSSION

QED moves to dismiss all of Johnson's claims as insufficiently pleaded. I address each in turn.

### I. FAILURE TO PROVIDE MEAL BREAKS

California Labor Code section 512 provides that "[a]n employer may not employ an employee for a work period of more than five hours per day without providing the employee with

a meal period of not less than 30 minutes." Cal. Lab. Code § 512. The employer satisfies this obligation if it "relieves its employees of all duty, relinquishes control over their activities and permits them a reasonable opportunity to take an uninterrupted 30-minute break, and does not impede or discourage them from doing so." *Brinker Rest. Corp. v. Superior Court*, 53 Cal. 4th 1004, 1040 (2012). If the employer fails to provide a meal break "the employer shall pay the employee one additional hour of pay at the employee's regular rate of compensation for each workday that the meal or rest or recovery period is not provided." Cal. Lab. Code § 226.7.

In order to state a claim for a meal break violation, a "[p]laintiff must allege facts that plausibly suggest that [d]efendant did not in some way authorize the breaks, and therefore such breaks were not provided, as required by the Labor Code." *Bellinghausen v. Tractor Supply Co.*, No. 13-cv-02377-JSC, 2014 WL 465907, at *4 (N.D. Cal. Feb. 3, 2014) [hereinafter *Bellinghausen III*]; *see also Fields v. W. Marine Products Inc.*, No. 13-cv-04916-WHA, 2014 WL 547502, at *2 (N.D. Cal. Feb. 7, 2014); *Lopez v. Wendy's Int'l, Inc.*, No. 11-cv-00275, 2011 WL 6967932, at *4 (C.D. Cal. Sept. 19, 2011). Notably, "an employer's lack of a meal break policy may subject the employer to liability because it suggests that the employer did not provide meal breaks to its employees." *Ambriz v. Coca Cola Co.*, No. 13-cv-03539-JST, 2013 WL 5947010, at *4 (N.D. Cal. Nov. 5, 2013) (emphasis omitted).

Johnson asserts that QED violated California Labor Code section 512 by providing employees meal breaks that were not within the first five hours of work and for less than the required 30 minutes. TAC ¶¶ 27, 30. Specifically, Johnson alleges that: (1) QED "instructed" Johnson and other employees to finish projects before taking meal breaks; (2) QED "encouraged" Johnson and other employees to take short meal breaks to quickly finish projects; and (3) QED's written policies, such as its Employment Manual, were "deficient." *Id.* Furthermore, Johnson claims that he and other class members were not paid premium wages when they did not receive full meal breaks. *Id.* QED responds that the complaint is deficient because it fails to provide: (1) specific instances of meal break violations, including the dates they occurred and which employees were affected; or (2) the nature of the alleged work involved in the rush projects. Mot. at 8-9.

4

QED compares the present case to *Bellinghausen v. Tractor Supply Co.*, No. 13–cv–02377–JSC, 2013 WL 5090869 (N.D. Cal. Sept. 13, 2013) [hereinafter *Bellinghausen II*], arguing that Johnson's allegations "are nearly identical to the allegations . . . that the court found to be insufficient" in that case. Mot. at 3. In particular, QED compares Johnson's allegation that QED's written policies did not explicitly state the timing and duration of required meal breaks to similar allegations rejected by *Bellinghausen II*. But this case is more analogous to *Bellinghausen III*, where the court found the claims to be adequately pleaded, than to *Bellinghausen II*.

In *Bellinghausen II*, the court dismissed the plaintiff's complaint, holding that the "bare allegation" that the defendant did not "appropriately advise" plaintiff of meal break rights was not enough to state a claim. *Bellinghausen II*, 2013 WL 5090869, at *4. The plaintiff thereafter amended his complaint, adding new allegations regarding the absence of a local meal break policy, as well as the defendant's alleged conduct in pressuring the plaintiff not to take breaks. *Bellinghausen III*, 2014 WL 465907, at *4. The court reasoned that without a local break policy and without any posting of any other information about required meal breaks, it was plausible to infer that the employer did not authorize breaks, and therefore lawful breaks were not provided. *Id.* at **4-5.

As was the case in *Bellinghausen III*, QED's meal break policy is also deficient. In *Bellinghausen III*, the national meal break policy provided that "Team Members are expected to take the entire rest and meal period each day as outlined in the Meal and Rest Period Policy *for their work location*." *Id.* at *4 (emphasis added). The plaintiff in *Bellinghausen III* nevertheless stated a claim because he alleged that there was no local policy for his work location. *Id.* Similarly, QED's Employment Manual states that "[s]upervisors will advise associates of the regular rest period length and schedule," "[s]upervisors will schedule meal periods to accommodate operating requirements," and "[r]egular working hours of associates are established at the time of employment and may be changed as authorized by the associate's manager." TAC, Exh. A. According to Johnson, QED "instructed" Johnson and other employees to work more than five hours before taking breaks, "encouraged" Johnson and other employees to take shorter breaks than required, and "directed" Johnson and other employees to not clock out for meal

1 breaks. TAC ¶¶ 30, 33, 34. Given the responsibility placed in QED supervisors to advise and
2 schedule work compliant meal and rest breaks, the allegations that QED instructed, encouraged,
3 and directed its employees to work in a manner contrary to the Labor Code at least plausibly
4 suggests that the QED did not in fact have a compliant meal break policy.

5 In addition, QED contends that Johnson must "include in his complaint facts
6 *demonstrating* that he *actually* missed a meal period for which he was not compensated." Mot. at
7 8. But "a plaintiff need not identify precisely the dates and times she worked overtime" so long as
8 they provide "sufficient detail about the length and frequency of [their] unpaid work to support a
9 reasonable inference that [they] worked more than forty hours in a given week." *Landers v.*
10 *Quality Commc'ns, Inc.*, 771 F.3d 638, 645 (9th Cir. 2014). Here, Johnson alleges that he and
11 other employees "took breaks of approximately only 20 or 25 minutes to quickly finish rush
12 projects at least once every two weeks." TAC ¶ 34. This is sufficient to support a reasonable
13 inference that putative class members worked more than forty hours in the weeks in which they
14 were required to take shortened breaks. Johnson's meal break claim is plausibly alleged.

## II. FAILURE TO PAY HOURLY AND OVERTIME WAGES

16 Under California Labor Code section 223, "[w]here any statute or contract requires an
17 employer to maintain the designated wage scale, it shall be unlawful to secretly pay a lower wage
18 while purporting to pay the wage designated by statute or by contract." In addition, employees are
19 owed overtime compensation for work in excess of eight hours per workday or forty hours per
20 workweek. Cal. Lab. Code § 510(a).

21 Johnson claims that QED did not pay him and other employees all of the hourly and
22 overtime wages that they were entitled to. TAC ¶¶ 39-59. Johnson alleges that "[a]s a result of
23 Defendants' policy or practice of automatically deducting one half hour from employees'
24 timecards for every work day for a meal period, even on those occasions that a full 30 minute
25 break was not taken, Plaintiff and [other employees] were required to perform off-the-clock work
26 that Defendants either knew or should have known they were performing." *Id.* ¶ 57. Because
27 Johnson plausibly alleges that he was not able to take a full 30-minute meal break, and QED has a
28 policy of automatically deducting 30 minutes from employee's paychecks regardless of the actual

6

length of their meal period, his overtime claim based on these missed wages also survives. *See Ambriz*, 2013 WL 5947010, at *5 (holding that allegations of an automatic 30-minute time deduction policy and required off-the-clock work were sufficient to state a claim for failure to pay hourly and overtime wages).[1]

### III.   FAILURE TO TIMELY PAY ALL FINAL WAGES

California Labor Code sections 201 and 202 require employers to pay employees unpaid earned wages immediately upon termination, upon resignation if 72 hours notice is given, or within 72 hours of resignation if no notice is given. If an employer willfully fails to pay these wages, the employee may bring suit to recover a penalty in addition to the wages. Cal. Lab. Code § 203.

This claim has been plausibly alleged. Johnson claims that QED did not pay him and other employees their fully earned wages because QED's auto-deduction policy caused some of the employees to work off-the-clock when they took shortened meal breaks. TAC ¶ 77. Johnson further alleges that QED's conduct was willful because QED has "the ability to pay final wages in accordance with Labor Code §§ 201 and 202 but [has] intentionally adopted policies or practice[s]," such as the auto-deduct policy, "that are incompatible with those requirements." *Id*. ¶ 80. Johnson's allegations of willful conduct are sufficiently pleaded because it is at least plausible that QED knew its employees were taking lunch periods of less than 30 minutes. *See Barnhill v. Robert Saunders & Co.*, 125 Cal. App. 3d 1, 7 (Ct. App. 1981) ("As used in section 203, 'willful' merely means that the employer intentionally failed or refused to perform an act which was required to be done.").[2] Correspondingly, QED's motion to dismiss Johnson's claim for failure to timely pay final wages is DENIED.

---

[1] Because Johnson sufficiently alleges his first two claims for missed meal and rest breaks and failure to pay overtime, and Johnson's third claim for failure to provide accurate written wages is derivative of his first two claims, QED's motion to dismiss the third claim is DENIED.

[2] This claim also survives for the independent reason that Johnson alleges QED willfully failed to pay him his final wages within the 72-hours period provided by California Labor Code § 201. *See* TAC ¶74 (claiming "did not receive his final paycheck until approximately eight (8) days after his termination").

### IV. UNFAIR COMPETITION

The UCL prohibits "any unlawful, unfair or fraudulent business act or practice." Cal. Bus. & Prof. Code § 17200. The "unlawful" prong of the UCL "borrows violations of other laws and treats them as independently actionable." *Daugherty v. Am. Honda Motor Co., Inc.*, 51 Cal. Rptr. 3d 118, 128 (Ct. App. 2006). Because Johnson's UCL claim is derivative of his California Labor Code claims, which have been adequately alleged, his UCL claim also survives. *See Ambriz*, 2013 WL 5947010, at *7 (denying defendant's motion to dismiss the UCL claim when it was entirely derivative of the California Labor Code claims).

### V. FAIR LABOR STANDARDS ACT ("FLSA") VIOLATION

Under the FLSA, "no employer shall employ any of his employees . . . for a workweek longer than forty hours unless such employee receives compensation for his employment in excess of the hours above specified at a rate no less than one and one-half times the regular rate at which he is employed." 29 U.S.C. § 207(a). In addition, an employer must keep and preserve records of the wages and hours of employees. 29 U.S.C. § 211(c). Johnson claims that QED violated the FLSA because: (1) QED had a policy of automatically deducting 30 minutes from employees' hours resulting in overtime work that was not paid; and (2) QED failed to keep accurate records of all hours worked by employees. TAC ¶¶ 98-112.

QED's only argument that the FLSA claim should be dismissed is that the claim is derivative of prior causes of actions that have not been properly pleaded. However, Johnson's FLSA claim is plausibly alleged for the reasons explained above regarding his corresponding California Labor Code claims. *See Acho v. Cort*, No. C 09-00157 MHP, 2009 WL 3562472, at *3 n.3 (N.D. Cal. Oct. 27, 2009) ("The facts necessary to support the claims under [California] Labor Code . . . are virtually identical to those necessary to support the FLSA claim."). The TAC provides sufficient factual allegations to establish that when Johnson worked on rush projects, QED's instruction and encouragement to take short and untimely breaks resulted in uncompensated overtime work and inaccurate wage statements in violation of the FLSA. *See Landers*, 771 F.3d at 644-45 (holding that in order to survive a motion to dismiss an FLSA claim, "a plaintiff asserting a claim to overtime payments must allege that she worked more than forty

hours in a given workweek without being compensated for the overtime hours worked during that workweek").

## CONCLUSION

For the reasons described above, QED's motion to dismiss is DENIED. QED shall answer the TAC within 10 days.

**IT IS SO ORDERED**.

Dated: September 7, 2016



WILLIAM H. ORRICK
United States District Judge

9