UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| TERRILL JOHNSON,<br><br>    Plaintiff,<br><br>    v.<br><br>Q.E.D. ENVIRONMENTAL SYSTEMS INC.,<br><br>    Defendant. | Case No. 16-cv-01454-WHO<br><br>**ORDER GRANTING QED'S MOTION TO DENY CLASS CERTIFICATION; GRANTING IN PART PLAINTIFFS' MOTION FOR CONDITIONAL FLSA CERTIFICATION; DENYING QED'S MOTION FOR RULE 11 SANCTIONS; AND SETTING CASE MANAGEMENT CONFERENCE**<br><br>Dkts. No. 50, 53, 56 |

## INTRODUCTION

In this labor case, plaintiff Terrill Johnson brings a putative class action and Fair Labor Standards Act ("FLSA") collective action on behalf of himself and all similarly-situated non-exempt employees and former employees of Q.E.D Environmental Systems Inc. ("QED") because QED used an "automatic deduct" policy and failed to provide all meal periods, full wages or accurate wage statements as required by law. Third Amended Complaint ("TAC") ¶1 (Dkt. No. 29). QED now moves to deny class certification because QED did not have a common nationwide auto deduct policy: Johnson's testimony establishes that he was atypical of the class; and Johnson's testimony and evidence establish that there are only six to seven individuals in the class. Decertify Mot. at 1 (Dkt. No. 53). QED is correct; Johnson cannot meet the commonality, typicality, numerosity, and adequacy requirements of Rule 23 and the motion to deny class certification is GRANTED.

QED also moves for sanctions against Johnson's lawyers, arguing that they failed to conduct a reasonable investigation which would have revealed that Johnson was atypical of the class; that QED's policies comply with California law; and that the proposed class could not meet

1 the numerosity requirements for class certification. Sanctions Mot. at 1-3 (Dkt. No. 50). While I

2 agree with much of QED's argument, in light of its failure to provide critical discovery on

3 numerosity in a timely fashion, I DENY the motion for sanctions.

4 Johnson also moves for conditional certification of his FLSA meal break claim.

5 Certification Mot. at 1 (Dkt. No. 56). Because he has met the very low bar for conditional

6 certification, his motion for conditional FLSA certification is GRANTED in part.

## BACKGROUND

Johnson filed this putative class action on August 26, 2017, in California Superior Court. (Dkt. No. 2-1). QED removed the case to federal court on March 24, 2016, after Johnson added a FLSA claim to his Second Amended Complaint ("SAC"). (Dkt. No. 1); (Dkt. No. 2-2). QED moved to dismiss the SAC, which I granted because "Johnson ha[d] wholly failed to meet the minimum pleading requirements" and his allegations relating to an "unidentified 'policy or practice' " of not providing uninterrupted meal breaks were insufficient. Dkt. No. 27 at 3.

Johnson then filed his TAC, this time alleging that QED supervisors instructed and encouraged employees to skip or take shortened meal breaks and attaching excerpts from a July 2012 Employment Manual that outlines a meal break policy that is facially non-compliant with California law. TAC at 6; TAC, Ex. A (Dkt. No. 29-1). QED moved to dismiss, but I denied the motion because Johnson's allegations that QED pressured employees to skip meal breaks or take shorter meal breaks than required by law, in conjunction with the facially deficient policy outlined by the Employment Manual, was sufficient to meet the pleading standard. Dkt. No. 42 at 5 (explaining that because the deficient meal break policy placed "the responsibility [on] QED supervisors to advise and schedule work compliant meal and rest breaks, the allegations that QED instructed, encouraged, and directed its employees to work in a manner contrary to the Labor Code at least plausibly suggests that the QED did not in fact have a compliant meal break policy").

On September 30, 2016, QED produced to plaintiffs a California addendum to the employee manual, outlining a facially compliant meal break policy. Segal Decl. in Support of Oppo. to Sanctions Mot. Ex. 2 (Dkt. No. 62-3). Counsel for Johnson declares that this addendum was not included with the copy of the Employment Manual that Johnson provided to them in

1   October of 2014.  Shim Decl. ¶7.

2   Once the TAC was filed, QED began efforts to arrange a deposition of named plaintiff Terrill Johnson.  Sanctions Mot. at 3.  After Johnson's counsel refused 11 different deposition dates, Johnson was finally deposed on December 12, 2016.  *Id.*  At his deposition, Johnson testified that he had no knowledge about the meal break or time keeping practices of QED facilities outside the San Leandro facility and had never spoken to any employees at other facilities.  Connors Decl. Ex. A ("Johnson Depo") at 28:9-12, 23-24; 29:3-5; 77:8-19; 77:3-19; 83:7-22 (Dkt. No. 53-2).  He also testified that, to his knowledge, there were only six or seven other employees, all production line workers, at the San Leandro facility that were denied meal periods.  *Id.* 52:1-8, 13-20.  He specifically stated that he had no knowledge whether other non-exempt employees were denied meal periods, *id.* 97:23-98:8, and that the supervisors at the San Leandro facility would not have been denied lunch breaks or subject to the same meal break issues.  *Id.* 98:23-99:17.  He further testified that he believed he was denied meal periods and singled out because his supervisor didn't like him.  *Id.* 58:13-18; 72:20-73:20; 74:22-25; 76:3-6.

Johnson's counsel also belatedly served a 30(b)(6) notice on QED at plaintiff Johnson's deposition on December 12, 2016.  Dkt. No. 60 at 3.  QED refused to produce a 30(b)(6) deponent because the request was overbroad.  *Id.*  The parties brought their discovery dispute to me.  I ordered that they proceed with a narrowed notice, and depositions for two 30(b)(6) witnesses finally occurred on March 7, 2017.

On January 6, 2017, QED served on counsel for Johnson its motion for sanctions, explaining that if Johnson did not voluntarily dismiss the TAC within 21 days it would seek sanctions from the court.  Dkt. No. 59-1.  Johnson's counsel responded to this letter on January 28, 2017 offering to "add a clarification regarding QED's employment manual" but declining to dismiss the TAC.  Conners Decl., Ex. C (Dkt. No. 68).  Johnson did not take any action to amend the TAC and QED subsequently filed its motion for sanctions.  Dkt. No 50.

**LEGAL STANDARD**

**I.  FEDERAL RULE OF CIVIL PROCEDURE 23**

Federal Rule of Civil Procedure 23 governs class actions.  "Before certifying a class, the

trial court must conduct a rigorous analysis to determine whether the party seeking certification has met the prerequisites of Rule 23." *Mazza v. Am. Honda Motor Co., Inc.,* 666 F.3d 581, 588 (9th Cir. 2012) (internal quotation marks omitted). The burden is on the party seeking certification to show, by a preponderance of the evidence, that the prerequisites have been met. *See Wal-Mart Stores, Inc. v. Dukes,* 131 S. Ct. 2541, 2551 (2011); *Conn. Ret. Plans & Trust Funds v. Amgen Inc.,* 660 F.3d 1170, 1175 (9th Cir. 2011).

Certification under Rule 23 is a two-step process. The party seeking certification must first satisfy the four threshold requirements of Rule 23(a), numerosity, commonality, typicality, and adequacy. Specifically, Rule 23(a) requires a showing that:

(1) the class is so numerous that joinder of all members is impracticable;

(2) there are questions of law or fact common to the class;

(3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and

(4) the representative parties will fairly and adequately protect the interests of the class.

Fed. R. Civ. P. 23(a).

The party seeking certification must then establish that one of the three grounds for certification under Rule 23(b) applies. *See* Fed. R. Civ. P. 23(b).

## II. FLSA CERTIFICATION

An employee may bring a collective action under the FLSA on behalf of other "similarly situated" employees. 29 U.S.C. § 216(b). Most courts follow a two-step approach to determine whether employees in a proposed collective are "similarly situated" such that FLSA certification is appropriate. *Harris v. Vector Mktg. Corp.*, 716 F. Supp. 2d 835, 837 (N.D. Cal. 2010); *see also Daniels v. Aeropostale West, Inc.*, No. 12-cv-05755-WHA, 2013 WL 1758891, at \*5 (N.D. Cal. Apr. 24, 2013). During the first step, the court must determine whether the proposed collective should be informed of the action and given "notice." *Harris*, 716 F. Supp. 2d at 837. The "notice" stage determination of whether the putative collective members will be similarly situated is made under a "fairly lenient standard" which typically results in conditional certification. *Daniels*, 2013 WL 1758891 at \*6. At the notice stage it is the plaintiffs' burden to make

4

substantial allegations that the putative collective members were subject to an illegal policy, plan, or decision, by showing that there is some factual basis beyond the "mere averments" in the complaint. *Id.*

Given the lenient standard at the notice stage, courts have held that plaintiffs bear a "very light burden" in substantiating the allegations. *Prentice v. Fund for Pub. Interest Research, Inc.*, No. 06-cv-7776-SC, 2007 WL 2729187, at *5 (N.D. Cal. Sept. 18, 2007) ("Given that a motion for conditional certification usually comes before much, if any, discovery, and is made in anticipation of a later more searching review, a movant bears a very light burden in substantiating its allegations at this stage.").

"[T]he party opposing the certification may move to decertify the class once discovery is complete." *Benedict v. Hewlett-Packard Co.*, No. 13-cv-0019-LHK, 2014 WL587135, at *5 (N.D. Cal. Feb. 13, 2014). During this second stage the court makes factual determinations as to the "propriety and scope of the class, and must consider three factors: (1) the disparate factual and employment setting of the individual plaintiffs; (2) the various defenses available to the defendants with respect to the individuals plaintiffs; and (3) fairness and procedural considerations." *Richie v. Blue Shield of California*, No. 13-cv-2693-EMC, 2014 WL 6982943, at *7 (N.D. Cal. Dec. 9, 2014). During this stage the "court engages in a more stringent inquiry into the propriety and scope of the collective action" because "discovery is complete and the case is ready to be tried." *Labrie v. UPS Supply Chain Solutions, Inc.*, No. 08-cv-3182 PJH, 2009 WL 723559, at *4 (N.D. Cal. Mar. 18, 2009). The second step of FLSA certification occurs "after the conditional class has received notice and discovery has been completed. *Richie*, 2014 WL 6982943 at *7. "Where substantial discovery has been completed, some courts have skipped the first-step analysis and proceeded directly to the second step." *Smith v. T-Mobile USA, Inc.*, No. 05-cv-5274, 2007 WL 2385131, at *4 (C.D. Cal. Aug. 15, 2007).

**III.     RULE 11**

Rule 11 provides, in relevant part:

> **(b) Representations to the Court.** By presenting to the court a pleading, written motion, or other paper – whether by signing, filing, submitting, or later advocating it – an attorney or unrepresented

5

party certifies that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances:

(1) it is not being presented for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation;

(2) the claims, defenses, and other legal contentions are warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law; [and]

(3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery . . . .

**(c) Sanctions.**

(1) In General. If, after notice and a reasonable opportunity to respond, the court determines that Rule 11(b) has been violated, the court may impose an appropriate sanction on any attorney, law firm, or party that violated the rule or is responsible for the violation. Absent exceptional circumstances, a law firm must be held jointly responsible for a violation committed by its partner, associate, or employee.

Fed. R. Civ. P. 11.

"Rule 11 authorizes a court to impose a sanction on any attorney, law firm, or party that brings a claim for an improper purpose or without support in law or evidence." *Sneller v. City of Bainbridge Island*, 606 F.3d 636 (9th Cir. 2010). Where "the complaint is the primary focus of Rule 11 proceedings, a district court must conduct a two-prong inquiry to determine (1) whether the complaint is legally or factually 'baseless' from an objective perspective, and (2) if the attorney has conducted 'a reasonable and competent inquiry' before signing and filing it." *Christian v. Mattel, Inc.*, 286 F.3d 1118, 1127 (9th Cir. 2002) (quoting *Buster v. Greisen*, 104 F.3d 1186, 1190 (9th Cir. 1997). "An attorney may not be sanctioned for a complaint that is not well-founded, so long as she conducted a reasonable inquiry." *In re Keegan Mgm't Co., Securities Litig.*, 78 F.3d 431, 434 (9th Cir. 1996).

**DISCUSSION**

**I.      MOTION TO DENY CLASS CERTIFICATION UNDER RULE 23**

QED moves to deny class certification on all of Johnson's Rule 23 claims, arguing that he cannot establish Rule 23(a)'s prerequisites of (1) numerosity; (2); commonality (3) typicality; and

(4) adequacy. Decertification Mot. at 10-14. It is obvious that Johnson cannot establish numerosity, so I need not address the reasons to deny certification asserted by QED.

### A. Numerosity

Rule 23(a)(1) requires that a class be "so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(1). Formally, there is no "specific number of class members required for numerosity." *In re Rubber Antitrust Litigation*, 232 F.R.D. 346, 350 (N.D. Cal. 2005). However, "courts generally find that the numerosity factor is satisfied if the class comprises 40 or more members, and will find that it has not been satisfied when the class comprises 21 or fewer." *In re Facebook, Inc., PPC Advertising Litig.*, 282 F.R.D. 446, 452 (N.D. Cal. 2012).

QED argues that plaintiffs cannot reach this 21 person threshold. They note that at his deposition, named plaintiff Johnson testified that he only had knowledge relevant to QED's San Leandro facility, which has just 22 employees. Johnson Depo. 77:8-19 (Dkt. No. 51-1). With regard to that facility, Johnson testified that QED automatically deducted 30 minutes of time from his and his coworkers' paychecks for lunch breaks regardless of whether they took a full 30 minute break or any break at all, *id.* 80:24-81:8, and that his supervisor encouraged him and his coworkers to miss meal breaks or take shortened breaks to deal with rush orders *id.* 44:16-45:5. He also testified that, as far as he knew, only six or seven other individuals were denied meal breaks in the same way he was. *Id.* 52:1-53:20; 56:25-57:7; 57:18-21. Johnson admitted that at least some of the employees at San Leandro, such as the supervisors, would not have been subjected to the same policy and so would not have missed meal breaks. *Id.* 98:23-99:17.

This testimony is partially corroborated by the deposition testimony of David Simpson, a supervisor at the San Leandro facility who confirmed that for five months the San Leandro facility employed an auto-deduct policy. Simpson Depo. 52:16-53:9. Simpson also testified that this policy only impacted 11 employees and did not apply to the hourly office employees who input their time by hand, instead of by using a punch clock. *Id.* 12:23-13:4. QED asserts that this evidence demonstrates that there are only a handful of employees similarly-situated to Johnson and that this handful is insufficient to meet the numerosity requirement of Rule 23.

7

Plaintiffs make several unconvincing arguments in defense of their class action claims. First, they argue that Johnson did not testify that only seven people missed meal breaks, and instead testified that "everybody at once – at any given day, would get pulled in to do a rush order" and would miss lunch breaks as a result. Decertification Oppo. at 6 (quoting Johnson Depo. 56:13-24). This argument is highly misleading as Johnson subsequently clarified that when he said "everybody" he only meant the six or seven people who worked on the production line with him. Johnson Depo. 56:25-57:12. This makes sense as only the production line workers would be impacted by a "rush order."

Next, plaintiffs argue that QED has artificially limited the potential class to the San Leandro facility and that this is inappropriate because plaintiffs have asserted a nationwide class under the FLSA, and QED has 80 employees nationally. *See Lebrun Depo.* 9:7-23. This argument fails because plaintiffs' FLSA claim is not relevant to this motion, which applies only to plaintiffs' Rule 23 class claims. Plaintiffs' FLSA claim, brought under FLSA, is not subject to Rule 23's numerosity requirement, and so has no bearing on this issue.

Plaintiffs next assert that "to the extent some of the[ir] subclasses are limited to California," San Leandro is not the only California facility QED has had: they have also had facilities in Oakland and Colton, California, and currently have a facility in San Bernardino. It is important to note that all of plaintiffs' classes, excluding their FLSA collective, are limited to California. Although plaintiffs have defined many of their subclasses as applying to a national class of non-exempt employees, their claims are asserted solely under California labor law. TAC at 1. Plaintiffs' California state law claims do not apply to QED's employees located outside of California. *See Gintz v. Jack In The Box, Inc.*, No. C 06-02857 CW, 2006 WL 3422222, at *6 (N.D. Cal. Nov. 28, 2006).

Plaintiffs' argument that QED has, or has had, three other facilities in California is borderline frivolous. Johnson himself explained that the San Leandro facility used to be located in Oakland and then it moved to San Leandro – in terms of employees, the Oakland and San Leandro facilities are the same. Johnson Depo. 77:4-7. Similarly, approximately a year ago QED acquired a small company in Southern California with a facility in Colton that later relocated to San

8

1 Bernardino – in terms of employees, the Colton and San Bernardino facilities are the same. Lebrun Depo. 10:9-11:9. There are only four employees that work in San Bernardino, Lebrun Depo 11:10-17, none of them are production line workers, Simpson Depo. 20:6-8; 68:9-14, and they have never been subjected to an auto-deduct policy, *id.* 68:22-69:14.

The evidence presented by the parties demonstrates that QED only had a maximum of 25 hourly employees in California during the relevant period. Simpson Affidavit (Dkt. No. 71-1); Simpson Depo. 20:6-8; 68:9-14. This number could arguably meet the numerosity requirement, but as the evidence also shows, only a small number of these hourly employees were subjected to the same meal break policy and pressures as plaintiff Johnson. When considering only those plaintiffs actually similarly situated to Johnson, the California employees to which the auto-deduct policy applied, the proposed class has a maximum of 11 employees. This is insufficient to meet the numerosity requirement of Rule 23 and is fatal to class certification.

### B. Timing of Decertification Motion

Plaintiffs assert that QED's decertification motion is procedurally improper because under the court's schedule, plaintiffs have until May 3, 2017 to submit a motion for class certification. Decert. Oppo. at 3. They acknowledge that in *Vinole v. Countrywide Home Loans, Inc.*, 571 F.3d 935, 937 (9th Cir. 2009), the Ninth Circuit upheld a district court's decision to consider a motion to deny class certification filed before plaintiffs' certification motion and before the close of discovery, but argue that the case here is distinguishable from *Vinole* because in that case the district court had not set a deadline for class certification motions. Decert. Oppo. at 3. This distinction is not convincing.

In *Vinole* the Ninth Circuit made clear that a defendant may bring a preemptive motion to deny class certification. *Vinole*, 571 F.3d at 939, 942 ("Rule 23 does not preclude a defendant from bringing a 'preemptive' motion to deny certification. . . . [N]o rule or decisional authority prohibited [the defendant] from filing its motion to deny certification before Plaintiffs filed their motion to certify, and Plaintiffs had ample time to prepare and present their certification argument."). Further, the court rejected the idea that it is procedurally improper for a court to consider a decertification motion before its established pretrial scheduling deadlines. *Id.* at 942.

9

1  ("Plaintiffs have not offered any authority, and we have found none, for the proposition that a
2  district court either abuses its discretion or errs as a matter of law by considering the issue of class
3  certification before expiration of a pretrial motion deadline."). Plaintiffs' claim that QED's
4  motion to deny certification is procedurally improper is not supported by any legal authority.

### C. Motion to Deny Certification Analysis

Fact discovery is closed and the evidence is clear that plaintiffs cannot meet the numerosity requirement for Rule 23 because there are only a handful of California employees who were subjected to the auto-deduct policy or encouraged to miss meal breaks. There is no legal authority to support plaintiffs' claim that QED's motion to deny class certification is procedurally improper. Because plaintiffs cannot satisfy the numerosity requirement for Rule 23, plaintiffs' claims are not suitable for class treatment. QED's motion to deny class certification is GRANTED.

## II. MOTION FOR CONDITIONAL FLSA CERTIFICATION

Plaintiffs move for conditional certification of their nationwide FLSA claim. Certification Mot. at 1. They assert that QED had a nationwide policy of automatically deducting 30 minutes from employee paychecks for meal breaks, regardless of whether the employee actually took a full meal break and that employees were regularly encouraged to miss meal breaks, in violation of the FLSA. *Id.* They seek to conditionally certify a collective of all QED employees subjected to an auto-deduct policy during the relevant period. To satisfy his burden at the conditional certification stage, a plaintiff must provide "little more than substantial allegations, supported by declarations or discovery, that 'putative class members were together the victims of a single decision, policy, or plan.'" *Velasquez v. HSBC Finance Corp.*, 266 F.R.D. 424, 427 (N.D. Cal. 2010).

Plaintiffs point to a smattering of evidence to support their nationwide FLSA allegations. First, they note that plaintiff Johnson testified that QED automatically deducted 30 minutes from his and his coworkers paychecks, Johnson Depo. 80:20-81:9, and that his and his coworkers' lunch breaks were often interrupted for rush orders. *Id.* 46:5-17; 47:2-23; 56:13-21. This testimony is limited to the San Leandro facility as Johnson testified that he had no knowledge of the meal break policies at other facilities. *Id.* 77:8-19. Johnson's allegations of an auto-deduct policy are supported by time cards which show that for a five month period, from March 31, 2014

1 to August 22, 2014, the San Leandro facility where Johnson worked employed an auto-deduct policy. Segal Decl. Ex. 4 QED000783-789. Plaintiffs assert that Johnson's testimony, and the documentary evidence of San Leandro's auto-deduct policy, is sufficient to meet the low burden for conditional FLSA certification of a nationwide class.

QED opposes the motion for conditional certification, asserting that plaintiffs cannot show that there was a nationwide auto-deduct policy. Certification Oppo. at 9. In support, they point to evidence that all of QED's facilities used different timekeeping policies: San Leandro briefly had an auto-deduct policy that applied to product line workers but not hourly office employees, Simpson Depo. 52:16-53:9; the Dexter Michigan facility has had an auto-deduct policy since 2014 that applies to approximately 18 employees, but supervisors adjust employee timecards manually when they miss a meal break or take a shortened break, LeBrun Depo. 27:14-18; 41:18-42:8; and the San Bernardino facility does not, and has never had, an auto-deduct policy, Simpson Depo. 68:22-69:14.

While there is evidence that both the San Leandro and Michigan facilities have had auto-deduct policies, an auto-deduct policy, on its own, is not sufficient to sustain an FLSA claim. *Harp v. Starline Tours of Hollywood, Inc.*, No. 14-cv-07704, 2015 WL 4589736, at *6 (C.D. Cal. July 27, 2015) ("standing alone, automatic meal deduction policies are not per se illegal under the FLSA."). To make out an FLSA claim based on an auto-deduct policy, plaintiffs must allege a "failure to compensate an employee who worked with the employer's knowledge through an unpaid meal break." *Wolman v. Catholic Health Sys. of Long Island, Inc.*, 853 F. Supp. 2d 290, 301 (E.D.N.Y. 2012). In the context of an auto-deduct policy, this means the plaintiff must demonstrate "that enforcement of the automatic deduction policy created a policy-to-violate-the policy." *Camesi v. Univ. of Pittsburgh Med. Ctr.*, No. 09-cv-85J, 2011 WL 6372873, at *4 (W.D. Pa. Dec. 20, 2011). In *Harp*, the court found plaintiffs had sustained this burden for a collective of drivers by presenting declarations from employee-drivers who explained that they were often encouraged by supervisors to miss lunch breaks, but were nevertheless deducted 30 minutes of pay due to an auto-deduction policy. *Harp*, 2015 WL 4589736, at *5. The court also found that plaintiffs had failed to show that all other hourly employees were similarly situated because the

11

employee-drivers' declarations established that it was the specific pressures of their jobs that resulted in them missing meal breaks. *Id.*

In this case, while there is evidence that 11 employees at San Leandro and 18 employees in Michigan were subjected to an auto-deduct policy, plaintiffs must point to something more to allege a viable FLSA violation. Just like the drivers in *Harp*, Johnson's testimony that his supervisor pressured him and his coworkers to miss meal breaks to deal with rush projects satisfies this requirement. However, Johnson was clear that his testimony only applied to the 6-7 production line employees he worked with and that he couldn't speak to whether any other employees missed meal breaks. Johnson's testimony reveals that it was the specific pressures of the production line job in San Leandro that caused employees to miss breaks and there is no evidence that other employees at the San Leandro facility or those in Michigan face similar pressures. Kevin Lebrun, who testified regarding the timekeeping policies at QED's Michigan facility, explained that the only employee he could remember who had missed a meal break in Michigan had done so because "he was working on a project putting parts together. He said he was almost complete with it as he was approaching the 12:00 hour, so rather than stop, go to lunch, he chose to work through his lunch and complete it." Lebrun Depo. 46:2-6 (Dkt. No. 71-1). Lebrun further testified that he adjusted that employee's time so that he was paid for working through the lunch. *Id.* 45:5-19. Plaintiffs have not presented employee declarations or any other evidence that any employees at the Dexter facility missed meal breaks.

Johnson has testified that he and six or seven of his coworkers were regularly encouraged to miss meal breaks to accommodate rush jobs. Plaintiffs have also presented evidence that from March 31, 2014 – August 22, 2014 the San Leandro facility had an auto-deduct policy. This evidence, together, is sufficient for plaintiffs to meet their burden at the conditional certification stage with regard to a narrow group. *See Harp*, 2015 WL 4589736, at *5.

QED argues that I should still deny FLSA certification for this small group because Johnson testified that he was singled out for disparate treatment by his supervisor and so is not similarly situated to his coworkers. *Id.* at 12. Although Johnson testified that he missed more meal breaks than his coworkers, this goes to the extent of his damages and does not undermine his

12

testimony that he and his coworkers were often required to work on rush jobs together and consequently missed meal breaks. This potential difference between Johnson and his coworkers regarding the extent of their alleged damages does not defeat collective certification.

Plaintiffs' motion for conditional FLSA certification is GRANTED with regard to production line workers at the San Leandro facility for the time period of March 31, 2014 – August 22, 2014. It is DENIED with regard to all other QED employees and time periods.

## III. MOTION FOR SANCTIONS

QED moves for Rule 11 sanctions against plaintiffs' counsel, alleging that plaintiffs' case is legally and factually baseless and that plaintiffs' counsel knew or should have known this at the time they filed the complaint. Sanctions Mot. at 1 (Dkt. No. 50). QED seeks an award of QED's costs and reasonable attorneys' fees, and a dismissal of this case with prejudice. *Id.* QED points to a number of weaknesses in plaintiffs' case, an incomplete and misleading Employee Manual attached to the TAC, and plaintiffs' counsel's behavior as evidence that Rule 11 sanctions are appropriate. Despite flaws in plaintiffs' case and in plaintiffs' counsels' investigation and work in this case, which fell well below any reasonable professional standard, I conclude there is insufficient evidence of bad-faith conduct on the part of plaintiffs' counsel to justify the extreme remedy of sanctions, particularly because QED delayed production of the critical testimony that verified the lack of numerosity.

### A. The Employee Manual

QED makes a number of arguments regarding the misleading Employee Manual attached to the TAC. It asserts that plaintiffs' attorneys intentionally omitted the California Addendum from the TAC and intentionally made false allegations that QED had facially non-compliant meal break policies. Alternatively, it argues that plaintiffs' counsel failed to conduct an adequate investigation to discover these issues. In support of these arguments it notes that plaintiff Johnson testified that he had seen the California Addendum, that he had received a copy, and that he believed that QED's policies met California's labor requirements.

Extrapolating from this testimony, QED speculates that plaintiffs' counsel received a copy of the California Addendum from Johnson and knew that QED had a facially compliant California

13

policy but chose not to attach the Addendum to the TAC and to instead make false allegations about QED's policies based on the rest of the Employee Manual. Sanctions Mot. at 4. Alternatively, it argues that Johnson improperly failed to produce the California Addendum to his counsel. In response to these assertions, plaintiffs' counsel has presented declaration testimony explaining that they did not receive the California Addendum from Johnson, who only sent counsel an electronic copy of the general Employee Manual, which did not include the California Addendum. Shim Decl. ¶7. Although Johnson testified that he had received a California Addendum, he did not affirmatively testify that he had retained this document when he left QED. Instead, he testified that he had left many of his hard copy manuals in his old desk at QED's facility when he left. Johnson Depo. 157:14-20. He also testified that he had produced all relevant documents in his possession to his counsel, with the exception of some notes he had taken regarding his supervisors' conduct that had accidentally been shredded.

Plaintiffs' counsel's explanations regarding the Employee Manual are consistent with a good-faith mistake and a reasonable investigation. It appears that counsel did not receive the California Addendum and that Johnson did not have a copy of the Addendum to produce to them.

QED argues that even if plaintiffs' counsel did not receive a copy of the California Addendum, because Johnson was aware of its existence and testified that he believed QED's policies met all legal requirements, they nevertheless knew, or should have known, that QED's policies complied with California law. Sanctions Mot. at 4. This argument is not persuasive. While Johnson was able to recognize the California Addendum when it was placed in front of him, this does not mean he would have been able to describe the document in detail to his counsel, outline its policies, or even recall that it existed. It is perfectly reasonable to assume that an employee, who no longer has a copy of his complete company Employee Handbook, would not remember its contents in detail or realize that it is missing a California Addendum. Further, while Johnson testified that he was unaware of any QED policies that violated California law, Johnson is a lay plaintiff, with no special knowledge of labor law. It would be unreasonable for plaintiffs' counsel to rely on the lay opinion of their client instead of the documentary evidence that he has produced to them.

14

Johnson's testimony that he had seen the California Addendum and believed QED had compliant policies does not demonstrate that his counsel should have known that their allegations regarding QED's meal break policies were incorrect.

### B. Plaintiff was unaware of any wage statement violations

QED asserts that plaintiffs' wage statement claims were baseless because Johnson was unable to identify any inaccurate wage statements and was unaware of ever receiving any. Sanctions Mot. at 6. That Johnson was not aware of receiving any inaccurate wage statements is irrelevant to the viability of a wage statement claim. Wage statement claims are highly legalistic and a non-expert plaintiff is not likely to understand whether a wage statement is "accurate" or not under California law. Even if plaintiff was well-versed in California wage and hour requirements, it would be difficult for him to identify inaccurate wage statements in this case by reference to the wage statements alone. A wage statement claim that is derivative of a missed meal break claim relies on a finding that employees were not compensated for missed meal breaks – this information would not be obvious by reference to the wage statements themselves. Johnson's inability to identify any inaccurate wage statements does not demonstrate that these claims are baseless.

### C. Plaintiff was only aware of seven employees who had interrupted meal breaks

QED asserts that plaintiffs' class claims were frivolous because plaintiffs' counsel should have known they could never meet the numerosity requirement of Rule 23. While Johnson testified that he was only aware of seven employees denied meal breaks at San Leandro, he also testified that he could not be sure if a number of other employees were similarly denied breaks. Further, he explained that there were approximately 22 employees at the San Leandro facility and that QED had other facilities. At the outset of a case, prior to discovery, it may be difficult for attorneys to assess basic information about a company, including its size and number of past and present employees. As classes may be suitable for class treatment with as few as 21 members, it was not unreasonable for plaintiffs' counsel to believe that at least this many employees at QED would be impacted by the meal break interruptions Johnson described.

QED notes that in January of 2016 it provided plaintiffs' counsel with an affidavit stating

15

that there were only 15 non-exempt employees in California. While this certainly should have given plaintiffs doubts about their ability to meet Rule 23's numerosity requirements, plaintiffs' counsel had reason to believe that there were at least 25 hourly QED employees in California during the relevant period and reasonably could have believed that QED was mistaken in designating certain employees as non-exempt or that the affidavit did not include all potential class members. Plaintiffs did not have the opportunity to depose QED's 30(b)(6) witnesses on this topic until March 7, 2017. While it is now apparent that plaintiffs cannot meet the numerosity requirement, plaintiffs' counsel did not have the most definitive evidence on this topic until long after filing the TAC, after QED filed its motion for sanctions, and after it filed its opposition on the motion for class certification. Plaintiffs' counsel reasonably could have believed they would be able to meet Rule 23's requirements until very recently in this case.

### D. Plaintiff was not typical of the class

QED asserts that plaintiffs' counsel knew that Johnson was not typical of the class but improperly pursued class claims anyway. They note that Johnson testified that he believed he had been singled out by his supervisor and had received disparate treatment.

Plaintiffs' counsel asserts that plaintiff's testimony that he was bullied by his supervisor is not mutually exclusive with the class claims because Johnson could both have been bullied by his supervisor and subjected to an unlawful policy along with his co-workers. I agree. An employee can be singled out or have a personal problem with a supervisor and still be similarly situated with a class of coworkers on a separate or related employment issue. It was not frivolous for plaintiffs' counsel to pursue class claims simply because Johnson believed he was targeted.

### E. Plaintiffs' counsel has not even met Johnson, did not apprise Johnson about the nature of his role as class representative, and did not adequately communicate with him regarding the production and preservation of documents

QED asserts that plaintiffs' counsel failed to conduct a reasonable investigation because they never met with plaintiff Johnson in person, not even at his deposition, which they defended via videoconference. While there are certainly advantages to meeting a client in person, with modern technologies an attorney is capable of interviewing a client, reviewing relevant evidence,

16

and conducting a preliminary investigation without meeting a client face-to-face. Although it is surprising and poor practice that plaintiffs' counsel have never met their client in person, and this fact could explain some of the problems they faced in this case, by itself it does not definitively demonstrate that they failed to conduct a reasonable investigation.

QED also notes that, at his deposition Johnson appeared surprised when QED informed him that this case did not involve his personal claims against his supervisor. Johnson Depo. 75:1-19. QED asserts that counsel's failure to properly explain to Johnson his role as a class representative demonstrates they failed to adequately investigate this case. While Johnson's confusion about the claims at issue in this case raises some concerns about the adequacy of counsel's communications with their client, it does not necessarily demonstrate that they failed to adequately investigate the case themselves.

Finally, QED notes that Johnson destroyed a number of notes that he had taken about his treatment at QED in 2015, after he had retained his counsel. QED asserts that this destruction of evidence demonstrates a failure to conduct a reasonable investigation. This evidence is not persuasive. Johnson clearly did not intend to destroy the notebook and testified that he was upset it had accidentally been shredded because it contained helpful details about his supervisors' bad behavior. He also testified that he had produced all other relevant documents to his attorneys. Given this testimony it appears that plaintiffs' counsel told Johnson to produce all relevant documents to them and that Johnson did so, but accidentally destroyed a notebook that would have been helpful to his case. As there was no motivation for Johnson to destroy the notebook, it is unclear what plaintiffs' counsel could have done differently to prevent its destruction. The destruction of the notebook does not demonstrate that plaintiffs' attorneys failed to conduct a reasonable investigation.

### F. Sanctions Motion Analysis

QED has identified many weaknesses in plaintiffs' case and the way it has been litigated. But the evidence shows that plaintiffs' counsel communicated with Johnson and obtained and reviewed all of the documents he had that dealt with his employment at QED, with the exception of a notebook that Johnson had left at his mother's house and which was accidentally destroyed.

17

Based on Johnson's statements that QED had an auto-deduct policy, that it had 22 employees at the San Leandro facility and had other facilities, and that his supervisor encouraged him and his coworkers to miss meal breaks, it was not unreasonable for plaintiffs' counsel to believe they could succeed on their class action and FLSA claims. Further, without having the California Addendum, it was reasonable for plaintiffs' counsel to believe and assert that QED had a facially non-compliant meal break policy. "An attorney may not be sanctioned for a complaint that is not well-founded, so long as she conducted a reasonable inquiry." *In re Keegan Mgm't Co., Securities Litig.*, 78 F.3d 431, 434 (9th Cir. 1996).

I might feel differently about awarding sanctions if QED had clean hands. But it stonewalled the 30(b)(6) deposition that would verify the lack of numerosity until I ordered it to produce a person most knowledgeable. When a defendant has the information to defeat class certification and refuses to provide it absent court order, it does not deserve to benefit from its adversaries' failures. Rule 11 sanctions are not appropriate here. QED's motion for sanctions is DENIED.

## CONCLUSION

For the reasons outlined above QED's motion to deny class certification is GRANTED; plaintiffs' motion for conditional FLSA certification is GRANTED IN PART with regard to production line workers in San Leandro from the period of March 31, 2014 – August 22, 2014, and DENIED with regard to all other employees and time periods; and QED's motion for sanctions is DENIED.

A Case Management Conference is set for May 23, 2017 at 2:00 p.m. The parties shall file a Joint Case Management Statement by May 16, 2017, that proposes a schedule for this case through trial.

**IT IS SO ORDERED.**

Dated: May 3, 2017

William H. Orrick
United States District Judge

18